First case in the call, 210-1236, Esther Soria v. Chrysler Canada, Inc. On behalf of the Appalachians, this is Cheryl Bush. On behalf of the Appalachians, this is Michael Ray. Alright, prior to beginning, there are two motions pending. With respect to the opportunity to argue, do either side have any further comment? If not, that motion will be granted. There is a second motion to supplement the record. Do you have any additional argument? As a matter of fact, I can withdraw that motion because the information I sought to have added to the record is only contained in the record. Any objection to it simply being withdrawn? None. It will be shown as withdrawn. Otherwise, are both sides ready to proceed? Yes, Your Honor. You may proceed when you're ready. Thank you. Good afternoon. My name is Cheryl Bush. I represent Chrysler Canada. And I thank this Court for the opportunity to argue in being admitted pro hoc v. check. There has been some discussion in the briefs about whether Chrysler Canada was an assembler or a manufacturer. Usually when we think about manufacturing, we think about actually creation of some component parts. That's not what happens with Chrysler Canada. Does the threshold question, I mean, does it matter under the case law if you're an assembler or a manufacturer? Does that jurisdiction not apply to an assembler? No, I believe that it does matter because it weighs on the due process question as to whether it is fair to ask Chrysler Canada to come to the United States to defend a lawsuit when it basically took the airbag that someone else designed that Chrysler United States specified and plugged it into a vehicle. So that would be irrespective if an assembler, if you will, puts together parts, puts it in the stream of commerce knowing it's going to end up in a specific location, let's say a forum state. It's going to be sold. The mere fact that it's an assembler, not a manufacturer, puts that company beyond the reach of the statute. Is that your argument? My argument is that based upon the facts of this case, where Chrysler Canada did not design, was not involved in deciding on the distribution system, where everything got done by Chrysler United States, where they assembled the vehicle pursuant to the assembly instructions of Chrysler United States, it would be a violation of due process to require Chrysler Canada to defend a lawsuit in the state of Illinois. Are you aware of the case Connolly v. Unaroyal, 75 Illinois 2nd, 393? It says, assembling is an indispensable part of the making of all complicated articles and is a part of the manufacturing process of such articles. Liability and tort for defective product extends in addition to the manufacturer to the assembler of parts. That's what the case holds. I understand that. And what I'm trying to, my position is that if this is the airbag system that Chrysler Canada drops into the vehicle, Chrysler Canada doesn't know anything about the airbag door, doesn't know anything about the specifications for the airbag door. Was not involved in selecting the key safety defendant supplier. And for that reason, it would be a violation of due process. Understanding what that case holds. Isn't that really a defense on the merits and not a jurisdictional argument? I believe that it would be because it's jurisdictional because it's a fairness issue about due process. Is there any state in the United States that would be a fair forum to litigate the claim against Chrysler Canada? I would, um, I would say to the court that it would be, I would have a tough time defending a or filing a motion to dismiss for the state of Michigan. Because Chrysler Canada does come over to Michigan and, you know, is engaged in some business, but there is no such activity here in Illinois. Physical presence is not a requirement, is it? It is not a requirement. Absolutely not. And I'm just explaining to the court that I believe that it would be harder for me to make that same argument with respect to the state of Michigan. None of those factors apply to the state of Illinois. Um, with respect to what the lower court did, it really comes down to whether or not Illinois will follow the broad stream of commerce or stream of commerce plus. Um, and it is our position that a number of Illinois courts have found that stream of commerce plus is the law that Illinois will follow. All of those cases require some act, some affirmative act by the defendant who was sought to be made subject to jurisdiction. And there is no such act here. Filling orders for vehicles with an Illinois destination is not such an act? It is not. That would only fall under the broad, you know, mere awareness that your product may or will end up in the state of Illinois. That would only qualify for you for jurisdiction if the court went with the broad interpretation of stream of commerce, which is not what those other Illinois courts have held. Um, with respect to the lower court's opinion, I would add that the lower court seemed to say that 29,000 minivans were made and ended up in Illinois. That's not what the record shows. It was all of the vehicles sold in 2008 and 2009. Stream of commerce plus requires some deliberate act by Chrysler Canada. We have none here. Deliberate act to what end? Deliberate act, there has to be a nexus between the conduct of the deliberate act and the plaintiff's cause of action. And so being aware that the final product is being marketed in the form of state doesn't provide the nexus, you're arguing, as a matter of law? As a matter of law and the state of Illinois. On the United States Supreme Court, there is a split of opinion. Four justices said awareness is enough. Four justices said no, it's not. It's not just awareness, it's how many years, several years of filling orders for vehicles in Illinois. Doesn't that put Chrysler Canada on notice that you may be hauled into a court in Illinois? Well, perhaps I need to explain a bit more about the order process. All of the orders don't go to Chrysler Canada. They go to Chrysler United States. And Chrysler United States tells the Windsor Assembly Plant you're going to make this many type of vehicles and it's going to have this type of equipment. And Chrysler Canada can, you know, log into the Chrysler United States database and figure out which vehicles it needs to make. But they don't take any orders from anybody. They just get told by Chrysler U.S. how many vehicles to make and of what type. With knowledge that they're going to go to some state in the United States. There's no question that, you know, they know that there's going to, you know, most of them go to the United States. And therefore, we can assume that some of them will go to Illinois. And it's your position that only the state of Michigan would be a convenient forum or a fair forum? I don't think I, so when my client reads this, I don't get yelled at. I believe what I said was right. Well, he can listen too. I would have a hard time arguing that jurisdiction was not proper in the state of Michigan against Chrysler Canada. We'll go back to the point that was raised earlier. If the shipping tags are on the products when they leave Chrysler Canada designated for Illinois dealerships. Yes. How do you argue it's not foreseeable they're going to end up in Illinois and be used in Illinois? I don't argue it's not foreseeable. That is the broad stream of commerce approach. And if this panel were to say we are going to adopt the broad stream of commerce approach where it only has to be foreseeable and it will be in Illinois, I lose on that issue. All I can argue, I'm sorry, is the due process issue about the unfairness of having Chrysler Canada defend a vehicle that it just basically put together kind of like Legos, sir. I think you've answered the question. But isn't foreseeability relevant regardless of the test for due process analysis? I mean, foreseeability applies to either test that we apply. It does, but I cannot believe it reaches the argument that I have made on due process. When you have a company in Canada who just is putting these parts that somebody else designs and makes together, that the foreseeability issue is not what creates the unfairness. It's how do they defend what airbag door got put on. They had nothing to do with it. What specific litigation burdens would defending in Illinois impose upon your client as opposed to litigating in some other state? I don't believe relative to any other state there would be some travel burden between Michigan and Illinois. I can't tell the court that that is significant and nor would I attempt to argue that. But I don't believe that the travel burden or even the litigation burden is what's important here. What's important here is actually Canada doesn't know anything about airbags. But that's the due process issue, which we only get to if the court declines to apply stream of commerce plus some act. Because when you look at the record below, I mean, when I went through their brief, there's a whole lot of stuff about what we do in the United States. And the only argument they essentially make is that it was foreseeable or we knew it would end up in Illinois. And if this court determines that's enough and rejects the holdings of those other four cases that I mentioned, then I only have the due process argument. What about this argument specifically? If Chrysler Canada is not only aware that its products are distributed in Illinois, that would fall, I believe, under your narrow stream of commerce theory. It also purportedly availed itself of the privilege of conducting activities in Illinois, thereby satisfying the broad stream of commerce theory. What is lacking under either of those theories? There's no activities other than they knew or should have known that a vehicle would end up in Illinois. Activities consisting of what? Activities that would consist of contacts with the state of Illinois by Chrysler Canada. Chrysler Canada doesn't advertise in the state of Illinois trying to get customers. They don't maintain interactive websites that would allow Illinois residents to place an order for a Chrysler Canada vehicle. Chrysler Canada has no contacts at all with the state of Illinois. So under your argument, a manufacturer who has one state to deal with, uses a middleman, is immune from any loss of an accountability, correct? No, that's not true. Well, that's what you said. There's no direct contacts with the state. Well, that would be true if they didn't also have another purposeful availment of the laws of the state of Illinois. Could you explain that? Yeah, I'm not sure I follow the group. Okay, I'm not going to read the job, obviously. There's two theories. Under one theory, mere awareness that the vehicle will or may end up in the state of Illinois is sufficient to meet minimum contacts. It is our position that that is not the law of the state of Illinois. That instead, the state of Illinois has taken the other view expressed by Justice O'Connor of the United States Supreme Court. That mere awareness that your vehicle could end up in Illinois is not enough. You must have other contacts in the state of Illinois. You must have taken additional action to have subjected yourself to the laws of the state of Illinois. Does that answer the court's question? That's fine. Move on with your argument, please. I believe my 15 minutes is up. Illinois has stream of commerce plus. The only evidence the plaintiffs have put forth is that Chrysler Canada was aware. That is not sufficient under the law that they were aware it could end up or did end up in Illinois. There has to be other activity, other actions by Chrysler Canada in order to subject it to jurisdiction in the state of Illinois. You'll have a chance for rebuttal. Thank you. Counsel, do you wish to offer an argument? I do. You may proceed when you're ready. Thank you. May it please the court. Counsel, my name is Mike Reagan. And together with the other attorneys listed on the brief, I have the privilege of representing the plaintiff, Esther Serino, here. I have several preliminary comments before I get started. The first is that even though this is a de novo review, I'd like to start by saying that the trial judge knew what he was doing. Chrysler writes that he was attempting to apply the narrow stream of commerce theory when he wrote that this cause of action arises out of or is related to the defendant Chrysler's commercial activities in the state. And I don't believe that that's what he was doing. I think what he was doing there was saying that the injury here, the accident arose out of the jurisdictional facts which gave rise to jurisdiction, which is a requirement in the case. It's also a requirement which is expressed as a duplicative matter of the due process and Illinois statute. Secondly, the factual quibbles which Chrysler has raised are only quibbles and they're very unimportant, completely unimportant to the outcome of this appeal. The number of the vehicles can be found at C229. It's a spreadsheet. And on that spreadsheet, the minivans are RT, and we know that from the Massey debt at page 129, or page 29 of that deposition. And in 2008, there were 12,189 minivans which came from the Windsor plant to Illinois. And in 2009, there were 5,317, and the 29,000 vehicle number that's been passed around is the total number of Dodge vehicles, including minivans, which came from that plant to the United States in those two years. Secondly, are some made in St. Louis? Our statement in the brief was well-grounded on Massey's deposition. They say it's ambiguous, but it doesn't matter. If they make more vehicles in St. Louis, it simply makes no difference. Nextly, that even though this court's decision in this case might well lend itself to a statement as to what the law is stating a legal principle, I'd like to respectfully suggest that the primary work here today and in the future is to decide whether there is jurisdiction in this particular case under these particular facts and not to necessarily have to take on the task of writing a jurisdictional rule which would apply for all time and for all cases. Counsel, I'm appreciating that point. How do you respond to opposing counsel's argument that the mere fact that a manufacturer or assembler knows that at some point a product may end up in another forum state, if you will? That's not sufficient. They didn't ship anything. They were not actively involved with the state of Illinois. They were a middle person, if you will. So is that enough really to be aware of the fact your product may end up in a state? Do you need more than that? You don't need more. And as I work through this, I'm going to get to what she says are the Illinois cases that she relies upon. This case is unique because Chrysler did make decisions here, did make decisions. Which Chrysler? Chrysler Canada. And I don't mean to be deliberately ambiguous about that. When I say Chrysler, I mean Chrysler Canada. Thank you. They made decisions here. So the decision is this. Five or 10,000 times each year, they know that at the end of their assembly line there is a vehicle which has a sticker that they put on it which says that it's going to a specific address in Illinois for the purpose of sale. Now, at that point, if they wish to not be subject to jurisdiction in Illinois, then they don't have to sell that product. They don't have to release it from them. They know thousands and thousands of times each year that there is a particular vehicle which is headed here. And so the decision to say, okay, we will release that into the stream of Congress, knowing that it's coming to Illinois, I suggest perhaps in response to the Court's question, is a decision in that regard. So is foreseeability enough to attach jurisdiction to the mere foreseeability? It is when there are such substantial commercial benefits that come from it. And it is, it even goes beyond, it transcends foreseeability here because it's certainty. I mean, there's simply no, this isn't like the tire stem case, Asahai, where they sold hundreds of thousands of tiny little parts all in the east. And they went into parts and they knew empirically because, you know, that some of them are going to end up in California. But they don't really know where it's going. So that's sort of a distant type of foreseeability as opposed to the clear certainty here that they know where it is expensive. Well, let me ask it this way. Is foreseeability enough in and of itself to attach jurisdiction or do you need foreseeability plus something else? Well, we're... If you do, how are those factors met in this case? Yeah. The Court has the absolute right to have us walk in a minefield here with this question. And so... I'm not trying to tension you. I understand. It's a fair question. I mean, it's simply, it is the dialogue in this case. So if it's saying foreseeability plus, if I were to, I mean, the answer to that is okay. Are we saying that the narrow view, as it's commonly phrased, is enough or is needed rather, whether that's needed, whether you have to have foreseeability plus something. I would say that you don't. And so let me go to the fundamental legal inquiry here, which is whether, in words of Burger King, and, of course, these cases simply build upon each other, and Burger King goes all the way back to international shooting. The fundamental legal inquiry is whether the defendant acted in such a way to purposefully avail itself of the privilege of conducting activities within the foreign state, thus invoking the benefits and protections of the law. And it's always stated, in every case, that those actions, and this is perhaps, Justice Hudson, coming back to your question, that those actions can be either direct or indirect. Worldwide Volkswagen talked about the fact that there was no proof there. Of course, it's a very different case than ours. There was no proof there that Worldwide indirectly, through others, sought to serve the Oklahoma market in question. And so Worldwide was laying the seeds of indirectly through others. And in Wiles, which is the Illinois Supreme Court case on this, versus Merida, they quoted with approval. I mean, they didn't act on it in that particular case, but they did quote that particular language from Worldwide Volkswagen. And the benefits are expressed in the case law as also being capable of being indirect in nature. It's not as if they have to come here opened up in office and therefore they have a benefit. And so the Gray case, which remains with the law, which remains cited by the U.S. Supreme Court and also by the Illinois Supreme Court, says that the benefits which you receive in a forum can be indirect in nature. And here the state laws are enforced, a stable environment for business is afforded, and so on. And so what specific benefits did Chrysler Canada derive from Illinois? I mean, they're the middleman dealing with Chrysler, the parent company. So how do you capsulize that Illinois somehow benefited directly or indirectly from Chrysler Canada? How they benefit from Illinois? Well, first of all, 85 percent of their vehicles come to the United States, but I'm not relying on that figure, even though it's indeed impressive.  It gets paid for all those, and so that is a corresponding benefit within the language of the U.S. Supreme Court, where they talk about the corresponding benefits which attach to the risk of being subject to jurisdiction. They have the fact that they get to stand here in this court today. They have the economy of Illinois as such as it is working. And so it's all the benefits of being able to participate in an economy in a state, which is the indirect benefit. And very direct, I mean, it's a huge plant. It's in business for a purpose, and they hardly would say they would trade no jurisdiction in Illinois for not selling cars here. The Chrysler's fundamental argument is that it didn't participate in commercial activities in Illinois, but it did. And I don't need to repeat now what I said earlier in the argument, perhaps a bit out of turn, which is with every vehicle, thousands of times a year, they make the decision, is this going to Illinois or isn't it? And as was stated in Worldwide Volkswagen, if the defendant does not like the risk of being subject to a foreign's laws, and I quote, it can act to alleviate the risk of burdensome litigation by procuring insurance, by passing the expected cost on the customers, or if the risks are too great, severing its connection with the state. Of course, in Burger King, the court said that, hey, the franchisee, rather than choosing to do business with Burger King, if it didn't wish to be involved in multi-state risk, could have chosen to operate a business, some other business, which was entirely confined within the state of the commission. So let me ask this, are you asserting jurisdiction under Illinois' long-arm statute? I am, Your Honor, but it is, of course, as the court knows, coextensive with the reach of the Due Process Clause, because it was amended, I think, in 1989 to say that Illinois jurisdiction extends as far as the U.S. Supreme Court will let us extend it. But yes, it is the long-arm statute which gives rise fundamentally to this rigor. Chrysler's favorite word in its briefs is may, that one of its vehicles may end up in Illinois, and it is really nothing other than a play on words. The word they should be using is will. They know each one is going to come here. That's because the shipping tax says it's going to Illinois. Yes, exactly, exactly. And it's nothing like Worldwide Volkswagen, where the vehicle, the single vehicle, was sold in New York, and a year later the purchaser is transferred to, I believe, Arizona, and he starts driving west and gets in a wreck in Oklahoma. Now, Chrysler writes, and this kind of gets into the nitty-gritty of the opinion writing here, is that Chrysler writes that Illinois courts have followed the narrow version of the Asa High Stream of Congress theory. But their authority for that statement is very weak. First of all, most of what they cite are federal district court opinions. But they do cite two Illinois cases. One is Zazove, and I butchered the person's name. The court in Zazove does make that statement, but that case was a false advertising case with direct advertising in Illinois. And the question which you're confronted with here, the questions you're confronted with here, didn't have to be decided in Zazove. So in Zazove, they just merely said that, you know, we follow the narrow stream. And they cited only one case. Okay, so rather than, you know, collecting cases and saying here's our support for that, they cited only one case, which is a case called Loose, L-O-O-S. And Loose, in only one sentence, said that your awareness is not enough, and cited only Asa High and did not offer a page citation within the opinion. And, again, that case didn't – that court didn't have to decide these questions. So it was dicta in Zazove. It was dicta in Loose. And that's about as weak as it could possibly be to still say that Illinois have any basis to say that. What about counsel's argument that all Chrysler Canada did was assemble the parts and that it would be unfair to drag Chrysler Canada into Illinois to defend a claim where all they did was assemble parts that they didn't know were defendant? With due respect to counsel, I'm amazed that they made the argument. I think that Justice Hudson's questions went right to the heart of that thing, which is that's their liability argument. They get to make it. It's a defense of the merits. It's a defense of the merits. And I don't need to spend any more of your time unless you have some other question about that. And that's all that it is. There is no support for that argument. I mean, it just – it's not a due process problem. It's not even a merits defense. But that's another day. A couple closing – getting towards the end here. First of all, to the extent that the court feels the need, or at least you're being asked by Chrysler, to choose between broad and narrow, I'd like to go back to one of my early comments, which is that really all you have to do is decide this case. This isn't a multi-state bar exam where you've got to fill in a blank and pick a particular line. And the facts of this case, I always confuse lie and lay. We'll say are. Are between broad and narrow. And they really are unique, again, because of the McRoney sticker on the car, where Chrysler knows every time that these thousands of expensive vehicles are going to Illinois and they have the right to make that choice. But if you have to pick one, if you force me to pick one, I say that broad is the – ought to be the law. And if it's not broad, how does the fact satisfy the narrow interpretation of this case? The way that this is sui generis, so to speak, that because of the unique facts here, that is the knowledge that every vehicle is coming here, that it just can't be shoehorned into being a merely foreseeable, merely possible that it may come here. Now, closing up quickly, if you find jurisdiction here, you have to make the further decision as to whether this would offend traditional notions of fair play and substantial justice, arcing back to international shoe. It clearly doesn't. Illinois has a high interest in adjudicating this dispute. It involves in Illinois an injury to an Illinois resident, a – finish? Yes. A product sold in Illinois and an occurrence in Illinois. And the plaintiff was rendered totally blind in this case. There's a high interest in obtaining efficient and sufficient relief. Illinois public policy favors safe products. And this is not a distant defendant. They are the width of one lake and one state and one river away from here, and it is no burden whatsoever. We respectfully ask that the circuit court be affirmed. Thank you. Thank you very much. Do you wish to reply? First off, the plaintiff is a resident of the state of Wisconsin. Earlier, I brought to the court's attention that – The occurrence is – Pardon me? The occurrence is what brings us to Illinois. That's true. I was just responding to what he had said. Zazov, this court has generally followed the narrow stream of commerce view expressed by Justice O'Connor's opinion. Arrow Products. This is at page 17 of our brief. Alone, the stream of commerce theory is not enough. Plaintiffs must demonstrate that the defendant has purposely taken action directed at Illinois. MJCA World of Quality. The fact that defendants knew – not maybe, not foreseeably – but the fact that defendants knew their product entered Illinois is not enough for Illinois to exercise personal jurisdiction over them without an additional showing that defendants have purposely availed themselves of Illinois customers. The Loose Case. Purposeful conduct directed toward the forum state which invokes its benefits and protections is sufficient to sustain jurisdiction over a non-resident. Such conduct constitutes minimum contacts with the state. However, a defendant's mere awareness that the stream of commerce may cause his product to enter the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposely directed toward the forum state. Here, no purposeful contact between Illinois and Benjamin has been shown, and the Loose Case is a product liability case. I would just add with respect to the very brief mention of the fact that of the St. Louis plant, it is contained in the deposition of Mr. Moss that the minivans were manufactured not only at the Windsor plant but also at the St. Louis plant. I tried to listen carefully for what purposeful availment counsel told you about in his argument. I didn't hear any. Thank you. Thank you very much.